```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
UNITED STATES OF AMERICA                :
                                        :
        -v-                             :    06 Cr. 600 (DLC)
                                        :
BASHI MUSE, et al.,                     :       OPINION
                                        :       AND ORDER
             Defendants.                :
                                        :
----------------------------------------X
```

Appearances:

For United States of America:

Daniel Lawrence Stein
Guruanjan Sahni
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

For the Defendants:

Bruce W. Klaw
Andrew J. Ceresney
Counsel to Defendant Mohamed Ahmed
Debevoise & Plimton, LLP
919 Third Ave.
New York, New York 10022

Sam A. Schmidt
Counsel to Defendant Bashir Ahmed
111 Broadway, Suite 1305
New York, New York 10006

DENISE COTE, District Judge:

    This Opinion confronts an error by the Government that infected more than a dozen federal wiretap applications. The Government consistently misidentified the controlled substance

which it asserted the targets of surveillance were importing and distributing.  It described the controlled substance as khat.  Khat is not a controlled substance but cathinone, one of its constituent elements, is a Schedule I controlled substance.

The defendants move to suppress all of the electronic surveillance evidence in this case, and its fruits, on the ground that they were obtained in violation of 18 U.S.C. § 2518 and the Fourth Amendment.  In the alternative, they request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).  For the following reasons, the motion is denied.

BACKGROUND

Forty-four defendants were indicted in this action for conspiring to distribute cathinone, a Schedule I controlled substance, and related charges.[1]  The motion to dismiss the Indictment has been denied, United States v. Muse, No. 06 Cr. 600, 2007 WL 391563 (S.D.N.Y. Jan. 30, 2007) ("January Opinion"), and trial is scheduled to begin on June 4, 2007.

Through thirteen court-authorized wiretaps, the Government recorded conversations of the defendants.  It hopes to rely on these recorded conversations at trial.  The first wiretap order was entered in September 2005, and the most recent was entered in July 2006.  Most of the wiretaps were conducted pursuant to

---

[1] The charges have been dismissed on the Government's application against one defendant.

2

authorization given by judges sitting in this district, but there were two wiretap orders issued as well in the Eastern District of New York and one in the Western District of Washington.

The affidavit dated February 7, 2006, supporting the first wiretap approved in this district, contains each of the principal infirmities on which this motion is premised. A description of this single affidavit tendered in support of the application for court authorization of the electronic surveillance will therefore suffice to present the framework for the defendants' attack on all of the wiretap evidence.

The affiant, a Special Agent with the Drug Enforcement Administration, explained that he was seeking authorization to intercept and record wire communications concerning offenses

> involving the importation of, distribution of, and possession with intent to distribute of, <u>controlled substances</u>, the use of wire facilities to facilitate the same, conspiracy to do the same and attempts to do the same, in violation of 21 U.S.C. §§ 841, 843(b) and 846; and laundering the proceeds of <u>narcotics trafficking</u>; conspiracy to do the same; and attempts to do the same, in violation of Title 18, United States Code, Sections 1956 and 1957.

(Emphasis supplied.) These were described as the "Target Offenses." Certain individuals were identified as the "Target Subjects" of the wiretap.

In the section of the affidavit that described the probable case to believe that the target telephone would be used to further the Target Offenses, the affidavit identified the

3

controlled substance. It explained that "since September 2005, the investigation has uncovered that the Target Subjects have been importing and distributing large quantities of khat -- a controlled substance that is widely used in Middle Eastern countries and by people of Middle Eastern descent within the United States."

In support of a finding of probable cause, the affiant reported that law enforcement officers had "seized" bags which were "later determined to contain nine bundles of khat, a controlled substance." Specific individuals were described as "khat distributors," and conversations were interpreted as having coded references to "fresh, high-quality khat." The conversations were described as referring to arriving shipments of khat, and to chewing khat. The affiant's analysis of toll records led him to believe that certain individuals were using a target cell phone "in furtherance of the Target Subjects' narcotics trafficking activities, by coordinating the delivery of khat." The affidavit explained that "the principal goals of this continuing investigation are to identify and develop evidence against not only the currently identified Target Subjects, but also all of their suppliers, customers and associates, as well as the locations at which the Target Subjects store <u>narcotics</u> and the methods by which they operate their <u>narcotics trafficking business</u>." (Emphasis supplied.)

As the January Opinion explained, khat is a plant that is

grown in the Horn of Africa.  Its leaves are chewed for their stimulant effect by residents of and immigrants from that part of the world.  January Opinion, 2007 WL 391563, at *1.  While khat is not a controlled substance, it contains a Schedule I controlled substance, cathinone.  Id. at *3.  Cathinone degrades rapidly after the khat plant is harvested, and by the time the khat leaves arrive in this country for distribution to immigrant communities, there is little likelihood that cathinone is present in any appreciable quantity or that it can contribute much if at all to any stimulant effect that the plant retains.  Id. at *4.

     The January Opinion denied the motion to dismiss, which was premised in part on the theory that the Government was required to show that sufficient cathinone remained in the khat leaves during distribution in the United States to cause a stimulant effect. Id. at *7-8. The Opinion held that the crime of conspiring to distribute khat required the Government to show that a "defendant knew that the aim of the conspiracy was to distribute 'some controlled substance.'"  Id. at *4.  It also held that the Indictment did not need to charge that the defendants conspired to distribute or import any particular quantity of cathinone.  Id. at *6-*9.  The defendants had argued that the Indictment was required to charge them with conspiring to distribute a marketable or usable quantity of cathinone, and that a charge based on the presence of any "detectable amount" of cathinone was insufficient.  Id. at *5.  Similarly, the January

Opinion rejected the defendants' contention that the Government was required to charge (and prove at trial) that the quantity of cathinone in the khat distributed by the defendants was sufficient to have a stimulant effect when chewed.  Id. at *6-*7.

DISCUSSION

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") authorizes court-ordered interceptions of wire and oral communications.  It contains "considerable detail," reflecting Congress' intent that the "statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications." United States v. Giordano, 416 U.S. 505, 515 (1974).  Among other protections, the "mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order."  Id. at 515-16.  The statute permits a federal court to issue a wiretap order

> if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap.

United States v. Diaz, 176 F.3d 52, 110 (2d Cir. 1999) (citing 18 U.S.C. § 2518(1)(b)(i), (3)(a), (b), (d) (1988)); see also 18 U.S.C. § 2518(1)(b)(i) (requiring that application include

6

"details as to the particular offense"); id. at § 2518(3)(a) (conditioning approval on probable cause to believe individual was committing "particular offense"); id. at § 2518(4)(c) (requiring authorizing order to state "particular offense" to which communication relates).

The standard for probable cause under Title III "is the same as the standard for a regular search warrant." Diaz, 176 F.3d at 110 (citation omitted). Thus, probable cause exists if the "totality-of-the-circumstances indicate a probability of criminal activity." Id. (citing Illinois v. Gates, 462 U.S. 213, 230-32 (1983)).

> The issuing judicial officer must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993) (citing Gates, 462 U.S. at 238).

Title III permits motions to suppress contents of intercepted communications on grounds that they were "unlawfully intercepted," intercepted under an authorization or approval that is "insufficient on its face," or intercepted in a manner that did not conform with the order of authorization or approval. Giordano, 416 U.S. at 524-25 (citing 18 U.S.C. § 2518(10)(a)). To suppress evidence seized pursuant to Title III electronic surveillance because of false statements in the affidavit

submitted in support of the wiretap application, a defendant must show each of the following: "(1) that the inaccuracies were the product of a Government agent's deliberate falsehood or reckless disregard for the truth rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause."  United States v. Correas, 419 F.3d 151, 155 (2d Cir. 2005) (citing Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

If the portions of the affidavit that remain after the allegedly false information is disregarded are sufficient to support probable cause, then "the inaccuracies were not material to the probable cause determination and suppression is inappropriate."  United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000).  The "ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause."  United States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005)(citation omitted).  These principles, which emanate from the Fourth Amendment, apply to "alleged falsehoods or omissions in wiretap affidavits and applications under Title III."  United States v. Bianco, 998 F.2d 1112, 1126 (2d Cir. 1993).

The defendants contend that the wiretap evidence must be suppressed because the affidavits do not contain probable cause

to believe that any crime was being committed since the affidavits incorrectly identified khat as a controlled substance, and failed to identify cathinone as the controlled substance, to show that it was likely that cathinone existed in the khat imported into this country, and to show that the subjects of the wiretaps knew that.  The defendants also argue that it was a gross mischaracterization to describe them as engaged in narcotics trafficking since neither khat nor cathinone is a narcotic.  It is noteworthy that, apart from arguing that the affidavits do not provide probable cause to believe the khat in which the targeted defendants were trafficking contained cathinone, none of the defendants contend that the applications for the wiretaps are otherwise unsupported by probable cause. That is, the defendants do not assert that the applications otherwise failed to provide probable cause to intercept a particular subject's conversations over the identified telephones.

Most charitably to the Government, its drafting error can be described as one of imprecision and informality.  It chose to refer to the controlled substance by using the name of the plant in which it is commonly found instead of identifying the chemical name under which it is listed in the controlled substances schedules.  Whether due to sloppiness, informality or more sinister motives, however, the first step is to determine whether the alleged false statements and omissions were material.  If

they would have made a difference to the authorizing judicial officer's finding of probable cause, then the defendants are entitled to a hearing to plumb the agents' scienter.

The defendants have not shown that the alleged errors and omissions are material.  This motion to suppress in fact resonates with the defendants' motion to dismiss the Indictment, in which the defendants argued that the Government has the burden to charge (and prove at trial) that the defendants knew that there remained a sufficient quantity of cathinone in the khat that they were importing or distributing such that the cathinone would still have a stimulant effect on the user, or in the defendants' words, that a marketable or consumable amount of cathinone was being distributed.  January Opinion, 2007 WL 391563, at *6-*7.  As explained in the January Opinion, Congress did not restrict liability to the presence of any particular quantity of cathinone.  Id. at *5.  It made illicit the distribution of "any" quantity.  Id. (citing 21 C.F.R. § 841(b)(1)(A).  Thus, the January Opinion denied the motion to dismiss an Indictment which charged the defendants with conspiring to distribute a detectable amount of cathinone in a form commonly known as khat.  Id. at *1.

The parties have not cited and this Court has not found any decision which has confronted the kind of infirmity which infects

these Title III applications.[2]  I have no hesitation in finding, however, that the "omissions" described by the defendants are not material.  These wiretaps would have been approved had the reviewing courts been told (1) that the controlled substance is cathinone, which is a Schedule I stimulant commonly found in khat, a plant harvested in Africa, and (2) that the cathinone may be present in khat leaves in only "detectable amounts" by the time of its arrival and distribution in this country.  Cf., e.g., United States v. Awadallah, 349 F.3d 42, 64-65, 67, 69-70 (2d Cir. 2003) (holding that omissions were immaterial because the warrant would have been appropriate even if omitted information had been disclosed); Bianco, 998 F.2d at 1126 (holding that omissions were immaterial both because the omitted material was not essential to the wiretap authorization and because even if the omitted information had been included, it would not have eliminated the need for the authorization).  That is so because it is a violation of federal law to conspire to import and distribute khat containing only a detectable amount of cathinone.  21 U.S.C. § 846; January Opinion, 2007 WL 391563, at *5-*9.

---

[2] What is unusual is that the error can be characterized in so many different ways, some more benign than others.  For instance, the error can be described as one of imprecision, using the common name of the controlled substance's plant host rather than the chemical name of the controlled substance.  The error, of course, would have been evident to anyone examining the controlled substance schedules in the Code of Federal Regulations, since khat will not be found there.  See 21 C.F.R. §§ 1308.11-1308.15.

Courts would have no reason to refuse to authorize wiretaps supported by sufficient probable cause to believe that an individual was engaged in commission of that federal crime through use of the identified telephones.

If one categorizes the error as a false statement as opposed to an omission, suppression is still not warranted. If one strikes all references to khat as a controlled substance, the affidavit still adequately describes the Subject Offenses as involving the conspiracy to import and distribute a controlled substance. Since it is a federal offense to distribute any controlled substance, and the identity of the particular controlled substance is immaterial to the issuance of wiretap authorization, the error in naming the controlled substance is of no moment to the issue of probable cause. Without the misdescription of khat as a controlled substance, the affidavit still contained sufficient probable cause to support the issuance of a Title III wiretap to detect the illegal distribution of a controlled substance.[3]

---

[3] In addition to arguing that probable cause is lacking, the defendants argue that the wiretap applications are facially insufficient in violation of 18 U.S.C. § 2518(10)(a)(ii) because they fail properly to identify the particular controlled substance the targets were suspected of trafficking. See id. (permitting suppression for facial insufficiency of wiretap authorization); id. § 2518(1)(b)(i) (requiring application to include "details as to the particular offense that has been, is being, or is about to be committed"). Since the identity of the controlled substance is immaterial to the existence of probable cause, this argument fails as well.

The references to "narcotics" and "narcotics trafficking" are of even less concern.  Cathinone is not a "narcotic drug," see 21 U.S.C. § 802(17),[4] but a "stimulant substance," see id. at § 802(9); 21 C.F.R. § 1308.11(f)(3).  The term "narcotics" is also used in another, broader context in the federal drug laws.  The term "United States narcotics laws" is defined as "the laws of the United States for the prevention and control of illicit trafficking in controlled substances (as such term is defined in Section 802(6) of Title 21)."  22 U.S.C. § 2708(k)(5).  Thus, the terms narcotics and narcotics trafficking are frequently used to refer generally to illegal drugs and illegal drug trafficking.  The reference is nothing more than a term of art under our laws and provides no basis to challenge the existence of probable cause in the affidavit.

As already mentioned in connection with a similar issue, it would have made no difference whatsoever to a reviewing judge if the affidavit had included no reference to narcotics or narcotics trafficking, or if it had described cathinone as a stimulant.  The issue for the reviewing court is whether the affiant has presented sufficient facts to find probable cause to believe a target or subject of the warrant will use a particular communications device to violate the law.  The court's task is not to rank violations according to an individual judge's feelings about the seriousness of any particular violation of the

---

[4] Narcotic drugs include opium and cocaine.  21 U.S.C. § 802(17).

13

law.  An application that describes the illegal distribution of a controlled substance which is a stimulant is no less likely to be approved than one that describes the illegal distribution of an opiate.  It simply does not matter if the controlled substance is an opiate, stimulant, hallucinogen or depressant.  See January Opinion, 2007 WL 391563, at *7 (describing categories of controlled substances).

All that being said, this error is hard to excuse and even harder to understand.  This error should not have happened.  Congress gave the executive branch the power to wiretap our conversations, subject to severe restraints.  Congress requires each application for electronic surveillance under Title III to be authorized by the Attorney General or an Assistant Attorney General whom he or she has designated.[5]  See 18 U.S.C. § 2516(1)(c), (e), (s); Giordano, 416 U.S. at 507-08.  Unlike an error in describing or omitting facts developed from a law enforcement agency's investigation, which may be unknown to or unappreciated by the Government lawyers when they prepare and

---

[5] It is hard to criticize the many judicial officers who issued these wiretap applications.  Their concern is with the existence or non-existence of probable cause.  As already observed, it matters not one whit to a reviewing court which controlled substance is being distributed, so long as there is probable cause to believe that there is a conspiracy to distribute a controlled substance, and that the authorized wiretap will find evidence of that illegal activity by the targets of the order.  No one would expect that, probable cause having been shown, judges must scour the Code of Federal Regulations to confirm that the application has properly and precisely described the controlled substance.

review the affidavit and application, this error is properly attributable to every Department of Justice attorney who reviewed this application.  The fault is properly laid at the feet of the United States Attorney's Office, which applied for the authorizations, and Main Justice, which reviewed and approved every one of these applications.

The defendants' remaining arguments can be swiftly addressed.  Some of the wiretap applications mention the substance cathine, another alkaloid found in khat.  The defendants argue that the Government deliberately failed to inform the authorizing judges that cathine was only temporarily listed on Schedule IV of the Controlled Substances Act, that this listing has expired, and that cathine in khat is exempt from the prohibition against norpseudoepinephrine.  Since the references to cathine are immaterial to the existence of probable cause, these alleged falsehoods and errors do not provide a basis for suppression.

CONCLUSION

For the foregoing reasons, the joint motion to suppress the

evidence gathered through the wiretaps is denied.

SO ORDERED:

Dated:     New York, New York
           March 21, 2007

                                   _____
                                        DENISE COTE
                                   United States District Judge